IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-03204-M-RJ

BRIAN LEE SARVIS,

        Plaintiff,

v.

NEW HANOVER COUNTY SHERIFF'S
DEPARTMENT, et al.,

        Defendants.

ORDER

This cause is before the court on defendants' converted motion for summary judgment, Mot. [D.E. 22], plaintiff's motion to appoint counsel, Mot. [D.E. 28], and plaintiff's motion to compel, Mot. [D.E. 30]. As discussed below, the court denies plaintiff's motions and grants in part and denies in part defendants' motion.

Relevant Procedural History:

On August 26, 2024, Brian Lee Sarvis ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed a civil rights complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 9].

Plaintiff generally alleges violations of his Eighth Amendment rights at the New Hanover County Detention Center ("Detention Center") between August 26 and December 16, 2021. Compl. [D.E. 1] at 3–5. Plaintiff specifically alleges: Deputies J. Hill ("Hill") and M. Thompson ("Thompson") "maliciously assaulted" him with punches and knees to his face and head; John Doe deputies "maliciously assaulted" him, slamming his face and head into concrete, dragging him to the holding cell, and stripping off his clothes; and a John Doe slammed his face while in full restraints and locked him in a cell for several days without exercise, showers, or cleaning supplies.

See id. These events allegedly occurred in front of Hill's patrol car, and within the Detention Center. See id. at 6. As to injury, plaintiff states he suffered "severe trauma, loosened teeth, ruptured eardrum," and that he is in constant fear of law enforcement. Id. at 7. Plaintiff seeks declaratory relief and damages. Id. at 8.

On February 3, 2025, the court, *inter alia*: conducted its initial review; dismissed the New Hanover County Sheriff's Department as a defendant; noted plaintiff's claims presumably sound either under the Fourteenth Amendment to the extent he was a detainee, or under the Fourth Amendment to the extent he was an arrestee, and not the Eighth Amendment; and allowed claims to proceed against Hill, Thompson, and John Doe deputies. See Order [D.E. 14].

On February 28, 2025, Hill and Thompson filed a joint motion to dismiss the complaint premised upon plaintiff's failure to exhaust administrative remedies, Mot. [D.E. 22], documents in support, Mot. Attach. [D.E. 22-1, 22-2, 22-3, 22-4], and a memorandum, Mem. [D.E. 23].

On March 3, 2025, the court dismissed without prejudice the John Doe deputy defendants, converted Hill's and Thompson's joint motion to dismiss on failure-to-exhaust grounds to a motion for summary judgment, and allowed plaintiff twenty-one days to file any response to the converted motion. Order [D.E. 25]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about this converted motion for summary judgment, the response deadline, and the consequences of failing to respond. [D.E. 26].

On March 21, 2025, plaintiff filed the instant motion to appoint counsel, Mot. [D.E. 28], and a response in opposition to the converted motion for summary judgment, Pl.'s Resp. [D.E. 29].

On April 14, 2025, plaintiff filed the instant motion to compel. See Mot. [D.E. 30].

On May 27, 2025, plaintiff filed a request for production of documents. [D.E. 32].

2

Plaintiff's Motions:

In support of his motion to appoint counsel, plaintiff asserts, *inter alia*, that he is unable to afford counsel, the issues are complex, he has limited access to a law library, his attempts to obtain counsel were unsuccessful, and he lacks knowledge of the law. See Mot. [D.E. 28].

There is no right to counsel in civil cases absent "exceptional circumstances." Jenkins v. Woodard, 109 F.4th 242, 247 (4th Cir. 2024); see Whisenant v. Yaum, 739 F.2d 160, 163 (4th Cir. 1984) (noting exceptional circumstances depends upon "the type and complexity of the case, and the abilities of the individuals bringing it" (quotation omitted)), abrogated in part on other grounds by Mallard v. U.S. Dist. Court for S. Dist. Court for S. Dist. Of Iowa, 490 U.S. 296, 300 n.2 (1989). Exceptional circumstances exist where 1) "the plaintiff 'has a colorable claim,'" and 2) "considering the claim's objective complexity and the plaintiff's subjective abilities, . . . the plaintiff 'lacks the capacity to present it.'" Jenkins, 109 F. 4th at 247 (quotation omitted). To make this determination, a district court must assess "(1) whether the plaintiff asserts a claim that is not frivolous, (2) the difficulty of the claim, and (3) whether the plaintiff can present the claim considering the skill required to do so and the plaintiff's individual abilities." Id. at 248.

Contra plaintiff's assertions, this case is not complex. Moreover, because plaintiff's claims, although nonfrivolous, are not difficult, and because his filings show that he is able to adequately present these claims, the court DENIES the motion to appoint counsel [D.E. 28].

Next, plaintiff's motion to compel seeks production of "all electronically stored information in relation to case # 21CR056533," including dispatch and radio communication, GPS location for patrol cars, body camera and drone footage, and the work and personal cell phone records for each defendant from 8 a.m. to 2 p.m. on August 26, 2021. Mot. [D.E. 30].

3

The court has not yet authorized discovery and, to the extent plaintiff's motion sounds under Federal Rule of Civil Procedure 56(d), his request seeks discovery that goes to the merits of his claims, not administrative exhaustion. See, e.g., Sanders v. Callender, No. CV DKC 17-1721, 2019 WL 3717868, at *3 (D. Md. Aug. 6, 2019) ("A non-moving party's Rule 56(d) request for discovery is properly denied where 'the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" (quoting Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006))). Thus, the court DENIES the motion either as premature or because it fails to satisfy Rule 56(d) requirements.

## Defendants' Converted Motion Summary Judgement:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

4

In support of their instant motion, Hill and Thompson argue that plaintiff failed to exhaust available administrative remedies regarding his claims. See Defs.' Mem. [D.E. 23] at 4.

The Prison Litigation Reform Act ("PLRA") states, in relevant part, that: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Successful PLRA exhaustion "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (citation, alteration, and internal quotation marks omitted).

PLRA administrative exhaustion, however, is mandatory only if the grievance procedure is "available." Ross v. Blake, 578 U.S. 632, 643–44 (2016) (finding grievance procedure "unavailable" when: 1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."); see Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022); Moss v. Harwood, 19 F.4th 614, 621–23 (4th Cir. 2021); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

5

Failure to exhaust administrative remedies is an affirmative defense that defendants generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

In his response in opposition, plaintiff states, *inter alia*, that: on August 26, 2021, he was assaulted by Hill and Thompson in front of Hill's patrol car; and that he was not then in Detention Center custody and had no outstanding warrants. See Pl.'s Resp. [D.E. 29] at 1–2.

Presuming, without deciding, that plaintiff was not a detainee during this alleged incident, the PLRA's exhaustion requirements do not apply, and these Fourth Amendment claims survive the converted motion for summary judgment. See 42 U.S.C. § 1997e(a); Porter, 534 U.S. at 529 (noting Congress likely "inserted 'prison conditions' into the exhaustion provision simply to make it clear that preincarceration claims fall outside § 1997e(a), for example . . . a § 1983 claim against [the prisoner's] arresting officer"); accord Cheatham v. Saturne, No. 1:18-CV-3154-SCJ-LTW, 2019 WL 10631254, at *1 (N.D. Ga. Mar. 1, 2019) (collecting cases), report and recommendation adopted, No. 1:18-CV-3154-SCJ, 2019 WL 10631251 (N.D. Ga. Aug. 2, 2019); Roach v. Bandera Cnty., No. CIV.A.SA-02-CA-106XR, 2004 WL 1304952, at *4 (W.D. Tex. June 9, 2004).

The court now turns to plaintiff's Fourteenth Amendment claims arising at the Detention Center. As the court previously noted, see Order [D.E. 14] at 4, plaintiff acknowledges on the face of the complaint that he did not file or exhaust Detention Center grievances as to his claims, but he indicates he did not do so due to fear of retaliation, see Compl. [D.E. 1] at 8.

Detention Center Division Commander Tim Wilson declares, *inter alia*, that: the Detention Center Inmate Handbook, grievance policy, and plaintiff's grievances during his 2021 term of incarceration all are attached; inmates may submit grievances at digital kiosks stationed throughout

the facility; and inmates must read and acknowledge the Inmate Handbook prior to using kiosks to submit grievances or requests. See Defs.' Mot. Attach., Wilson Decl. [D.E. 22-1].

The attached Detention Center Grievance policy provides, *inter alia*, that: a grievance is a "formal complaint or protest against treatment or conditions within the Detention Facility submitted in writing or electronically"; an "Appeal Hearing Officer" is "the Jail Administrator or designated independent authority who will review the facts and decision of the Watch Commander related to an inmate grievance, and uphold or overturn that decision"; inmates may grieve facility environmental conditions, "actions taken by personnel or other inmates," personal property issues, and "abuse, neglect or mistreatment"; inmates may not grieve "Detention Facility policies and procedures," "Federal and State court decisions," "Federal and State laws and regulations," "Decisions of the Appeal Hearing Officer," "Staff Assignments," and "Other matters beyond the control of the facility"; "Grievances may be submitted electronically via the housing unit kiosk or in writing on an Inmate Information Request Form within 7 days of the initial incident"; to be processed, the grievance must include the inmate's name and inmate number, "housing location and current date," if the filing is a grievance or an appeal, the "date and time of the alleged incident or action that caused the grievance to be filed within 7 days of the incident," a "specific description or summary of the incident," the name of the officers, inmates, or other people involved, and the filing inmate's signature; completed grievances are forwarded to Grievance Officer for review and immediate action for emergencies, and then referred to the appropriate supervisor for a written response; the Grievance Officer or appropriate supervisor "shall investigate all inmate grievances and provide **a written response to the inmate within seven (7) days of the date they received the complaint** [sic]"; responses will include "whether the grievance is unfounded, founded or non-

7

grievable [sic]," and "an explanation on reason for the response; the response will be forwarded to the Grievance Officer for review; all grievances are maintained electronically with a log that includes the name of the inmate filing the grievance, the date of filing, the date of response, whether the grievance was upheld or denied, and a grievance identification number; if unsatisfied with the response, an inmate may appeal to the Appeal Hearing Officer within 24 hours of receiving the response; the Appeal Hearing Officer's decision is in writing, will be forwarded to the inmate, and is final; reprisals by personnel against inmates for filing a grievance are strictly prohibited and will be investigated; and all Sheriff's Office personnel "shall adhere to and abide by the rules and regulations as set forth in this policy." See id., [D.E. 22-2] at 1–4.

The attached Inmate Handbook provides, in relevant part:

- The facility's grievance procedure provides you with a mechanism for addressing circumstances or actions you consider to be unjust.
- Submit a grievance using the Housing Unit kiosk.
- Prior to filing a grievance, you must first attempt to resolve the grievance with the staff member directly involved in the situation
- The grievance process includes an investigation of the issues including interviews with persons involved
- Once the issue(s) has been addressed you will receive written notification of the decision
- You have seven (7) days to file a grievance from the date of the incident. Any grievance filed outside of those seven (7) days will be dismissed without an investigation
- You may appeal the decision to the Jail Administrator (or designee) within 24 hours of receiving the decision. The Jail Administrator's (or designee's) decision is FINAL!

Id., [D.E. 22-3] at 25–26.

Although plaintiff filed several Detention Center grievances in the relevant timeframe, these grievances do not address the claims alleged in his complaint. [D.E. 22-4] at 1–31; see Woodford, 548 U.S. at 93 ("the PLRA exhaustion requirement requires proper exhaustion").

8

Although plaintiff asserts the inadequate relief he received from other grievances he filed at the Detention Center shows the grievance procedure was ineffective, see Pl.'s Resp. [D.E. 29] at 1–2, the PLRA requires exhaustion "regardless of the relief offered through administrative procedures," Booth v. Churner, 532 U.S. 731, 741 (2001), and the Supreme Court also stressed the Court "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise," id. at 741 n.6; see Ross, 578 U.S. at 641 ("The PLRA's history (just like its text) thus refutes a 'special circumstances' exception to its rule of exhaustion.").

Although plaintiff argues that inmates in lockup cannot meet the seven-day deadline for filing a grievance, see Pl.'s Resp. [D.E. 29] at 1–2, he does not show that he was prevented from filing a grievance as to the alleged Detention Center claims or otherwise support his prior bald allegation that he did not participate in the grievance procedure for fear of retaliation. See Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion").

In sum, as to the Detention Center claims, defendants have shown that plaintiff failed to utilize administrative remedies "in accordance with the applicable procedural rules," Woodford, 548 U.S. at 88, but plaintiff has not adduced facts to support a finding that the grievance procedure amounted to a "dead end" or an opacity, or that "machination, misrepresentation, or intimidation" prevented him from using it, Ross, 578 U.S. at 643–44; see Moore, 517 F.3d at 725 ("a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are" (citations omitted)); see also Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (per curiam) (unpublished) (noting a plaintiff has the burden of showing administrative remedies are unavailable (citing Moore, 517 F.3d at 725)).

9

Thus, after considering the evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, see Scott, 550 U.S. at 378, Hill and Thompson have met their burden of showing the absence of a genuine issue of material fact as to plaintiff's failure to exhaust administrative remedies for his claims arising at the Detention Center, Celotex, 477 U.S. at 325; see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167, whereas plaintiff has not shown that the grievance procedure was "unavailable," cf. Ross, 578 U.S. at 643–44; Matsushita, 475 U.S. at 587.

Accordingly, Hill and Thompson are entitled to summary judgment on plaintiff's Detention Center claims which the court dismisses without prejudice. See Anderson, 477 U.S. at 249; Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85; Moss, 19 F.4th at 623 n.3 (collecting cases).

Conclusion:

For the above reasons, the court: DENIES plaintiff's motion to appoint counsel [D.E. 28]; DENIES plaintiff's motion to compel [D.E. 30] either as premature or because it fails to satisfy the requirements of Federal Rule of Civil Procedure 56(d); GRANTS IN PART AND DENIES IN PART Hill's and Thompson's converted joint motion for summary judgment of [D.E. 22]; DISMISSES WITHOUT PREJUDICE plaintiff's claims arising at the Detention Center as unexhausted; DIRECTS the clerk to continue management of the action for plaintiff's surviving Fourth Amendment claims as to the alleged August 26, 2021, use-of-force incident in front of Hill's patrol car; and REFERS the action to Magistrate Judge Robert B. Jones, Jr. for entry of a scheduling order to include a new deadline for Hill and Thompson to answer or otherwise defend.

SO ORDERED this 24th day of July, 2025.

Richard E. Myers II
RICHARD E. MYERS II
Chief United States District Judge